IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RAYMUNDO A. JAIME,

    Plaintiff,

vs.

PEOPLE OF THE STATE OF CALIFORNIA, et al.,

    Defendants.

No. CIV S-00-1235 DFL CMK P

FINDINGS AND RECOMMENDATIONS

    Plaintiff is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges a 1997 judgment of conviction entered in the Sacramento County Superior Court after a jury found him guilty of assault with a deadly weapon while in prison (Pen. Code, § 4501) and two counts of unlawful possession of a sharp instrument while in prison (Pen. Code, § 4502(a)). Moreover, the trial court found the petitioner to have sustained three prior serious felony convictions within the meaning of California Penal Code section 667.

    In his petition, petitioner claims there was insufficient evidence upon which to convict him, ineffective assistance of counsel, and the prosecution used improper rebuttal testimony.

1

After careful review of the entire record in this action, including the lodged records of the state court, this court has determined that the petition for habeas corpus should be denied.

PROCEDURAL HISTORY[1]

On February 28, 1997, in Sacramento County Superior Court, a jury found petitioner guilty of assault with a deadly weapon while in prison as well as two counts of possession of a weapon while in prison. A bifurcated trial was held on his priors and the court found the prior convictions allegation true. On April 16, 1997, petitioner was sentenced to 25 years-to-life on counts 1, 2, and 3, consecutively and sentenced to 3 consecutive 5-year determinate terms for his prior convictions.

Petitioner filed a timely appeal with the California Court of Appeal, Third Appellate District. On November 12, 1998, the California Court of Appeal affirmed the petitioner's conviction and sentence.

Petitioner filed a timely petition with the California Supreme Court. On January 20, 1999, review was denied.

On November 15, 1999, petitioner filed a petition for writ of habeas corpus with the Sacramento County Superior Court. On January 11, 2000, the petition was denied on the merits and with citations to In re Harris, 5 Cal.4th 813, 829 (1993) and In re Waltreus, 62 Cal.2d 218 (1965) as to other claims.

On January 21, 2000, petitioner filed a petition for writ of habeas corpus with the California Supreme Court. On April 26, 2000, the petition was denied with a citation to In re Waltreus, 62 Cal.2d 218.

On June 5, 2000, petitioner filed a federal habeas petition. Pursuant to court order, petitioner filed an amended federal habeas petition on July 13, 2000. Respondent filed an

---

[1] See Am. Pet. at 2-4; Answer 1-3 and Exs. A through N.

answer and lodged state records on December 8, 2003. On December 29, 2003, petitioner filed a traverse.

FACTS[2]

>Shortly before 1 p.m. on June 7, 1994, Officer Michael Huckabay was on duty in the central yard tower of the California State Prison in Sacramento when he observed a fight between petitioner and inmate Diaz in the weightlifting area. He also noticed a second fight, about 150 feet from the first fight, involving only two persons, one of whom was inmate Marquez. No one was within 20 feet of petitioner and Diaz. Huckabay opined the fights could have started no earlier than five seconds before he observed them because he was continuously scanning the yard from the tower.
>
>While focusing his attention on petitioner's fight, Huckabay used the public address system to order the "yard down." There were approximately 300 inmates in the yard and most complied; however, the combatants in the two fights did not. The fighting ceased when another officer fired a warning shot. Both inmates Diaz and Marquez received stab wounds and were taken to the infirmary.
>
>Sergeant David Baughman heard Huckabay's order of "yard down" and saw petitioner and Diaz fighting. No inmates were within 20 feet of them. Baughman searched petitioner but found no weapons on him. After the inmates were removed from the yard, Baughman searched the area and found a stabbing instrument 15 to 20 feet from where petitioner and Diaz were fighting. Diaz's wound could have been caused by the stabbing instrument found by Baughman.
>
>Petitioner was taken to the segregation unit where a search revealed a cellophane wrapped bindle in his rectum which contained a cigarette lighter, tobacco, rolling papers and razor blades.
>
>Petitioner testified, claiming he saw another inmate bump into Diaz. Diaz dropped his weights and attacked petitioner. Petitioner denied either stabbing Diaz or telling inmate Loran Berry he had stabbed Diaz. When petitioner was taken to the segregation area he met inmate Loran Berry. Since petitioner was going to be incarcerated in the "Ad-Seg" unit, Berry offered to

---

[2] The facts are taken from the opinion of the California Court of Appeals for the Third Appellate District in People v. Jaime, No. 94F09891 (November 12, 1998), a copy of which is attached as Exhibit F to Respondents' Answer filed on December 8, 2003. For convenience, the word defendant has been replaced with the word petitioner.

3

provide him with tobacco. Petitioner agreed. Berry left but returned in a few moments and handed petitioner a bindle. Petitioner could tell the bindle contained a cigarette lighter but was unaware it contained razor blades. Petitioner placed the bindle in his rectum.

A few months later, according to petitioner, he spoke with Berry about the present charges. Berry agreed to write a statement relating the details surrounding Berry's delivery of the bindle to petitioner. Though Berry wrote that petitioner requested the razor blades, petitioner denied he did so. Petitioner later wrote Berry, asking him to change his statement to say he placed the razor blades in the bindle without petitioner's knowledge.

Berry, called in rebuttal by the People, testified he was serving a life term without possibility of parole for murder. While Berry saw the two fights which occurred on June 7, 1994, he did not see petitioner in the segregation area that day and he did not give petitioner tobacco, the lighter, or the razor blades.

Berry next saw petitioner in May 1995. They discussed petitioner's charges and his strategy. Petitioner told Berry the stabbings were the result of orders to do a simultaneous hit on Diaz and Marquez. Berry and petitioner concocted a story about Berry supplying petitioner with a bindle and Berry wrote a statement for petitioner to that effect.

Berry originally agreed to assist petitioner in return for petitioner's promise to stay out of prison gangs. Berry decided to tell what really happened when, a few months later, he overheard two Hispanics saying they wanted to "make a move" on Berry because he had "disrespected" them. Petitioner told them to leave Berry alone until after petitioner's trial.

(People v. Raymundo Jaime, slip op. at 2-4.)

I. Standard of Review

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at different result. Early v. Packer, 537 U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-406 (2000)).

II. Analysis

    A. Claim 1: Insufficient Evidence

First, petitioner claims that his Fourteenth Amendment due process rights were violated because there is insufficient evidence to support his conviction.[3]

When a challenge is brought alleging insufficient evidence, federal habeas corpus relief is available only if it is found that upon the record evidence adduced at trial, viewed in the light more favorable to the prosecution, no rational trier of fact could have found proof of guilt beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). Under Jackson, the court must review the entire record when the sufficiency of the evidence is challenged on habeas. Adamson v. Ricketts, 758 F.2d 441, 448 n.11 (9th Cir. 1985), vacated on other grounds, 789 F.2d 722 (9th Cir. 1986) (en banc), rev'd, 483 U.S. 1 (1987). It is the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. 307, 319. "The question is not whether this court is personally convinced beyond a reasonable doubt. It is whether rational jurors could reach the conclusion that these jurors reached." Roehler v. Borg, 945 F.2d 303, 306 (9th Cir. 1991).

---

[3] In his first claim, petitioner also contends that the trial court erred when it denied his motion for acquittal under California Penal Code Section 1118.1. Claims premised solely on a purported violation of state law are not cognizable on federal habeas review. See Estelle v. McGuire, 502 U.S. 62, 68 (1991); Pulley v. Harris, 465 U.S. 37, 41 (1989). Therefore, the court will only review petitioner's sufficiency of the evidence claim under the federal standard. Notably, the California standard and federal standard are the same. See People v. Johnson, 26 Cal.3d 557, 575-78 (1980), citing Jackson v. Virginia, 443 U.S. 307 (1979).

Under Jackson, the federal habeas court determines sufficiency of the evidence in reference to the substantive elements of the criminal offense as defined by state law. Jackson, 443 U.S. 307, 324 n.16.

Here, petitioner alleges that there is insufficient evidence to infer that he possessed and used the weapon found on the ground after the fight. Petitioner highlights the fact that Sergeant Baughman failed to find any weapons in petitioner's possession or on his person immediately following his arrest, the fact that a weapon was found twenty feet from where the petitioner was fighting, and that no identifiable latent prints were found on the weapon. Petitioner also claims that the weapon was placed in an officers pocket, clearing any fingerprints of the real perpetrator. Finally, petitioner alleges that he did not have a motive for the stabbing. Petitioner claims that all of these facts support his claim that there was insufficient evidence for the jury to convict him on counts 1 and 2. (Am. Pet. at 7-10.)

However, the evidence is sufficient. Officer Huckabay saw the fight between the petitioner and Diaz; Officer Huckabay was in the control tower scanning the yard; the fight could have started no earlier than five seconds before Officer Huckabay saw the fight; no one was within fifteen to twenty feet of petitioner and Diaz while they were fighting; Diaz was found stabbed in the lower right back immediately after the fight; and a stabbing instrument that could have made the wound was found approximately twenty feet from the petitioner. From all of this evidence, a rational jury could reasonably find that the petitioner stabbed inmate Diaz and then threw the weapon onto the ground. Therefore, there was sufficient evidence to sustain the conviction and the plaintiff's first claim should be denied.

B. Claim 2: Ineffective Assistance of Counsel

Next, petitioner claims that his trial counsel provided ineffective assistance by inadequately investigating information that the petitioner gave him involving count 3. In count 3 petitioner was charged with felony possession of razor blades. Petitioner claims that the holding cell where he was caught with contraband was not in the Administrative Segregation ("Ad/Seg")

6

1  section of the prison.  As a result, the razor blades found in his rectum were not contraband in
2  that particular location.  Petitioner contends that he brought this to his trial attorney's attention
3  who failed to investigate the issue adequately.  (Am. Pet. at 12-14.)  For this argument, however,
4  to make sense, it would be necessary for this court to agree with petitioner's contention that razor
5  blades hidden in the rectum are not contraband.  This would require a quantum leap.

6            The standards applicable to petitioner's ineffective assistance of counsel claim
7  were established by the Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 688 (1984).  In
8  order to prevail on the claim petitioner must show (1) an unreasonable error by counsel and (2)
9  prejudice flowing from that error.  To satisfy the first prong, petitioner must show that,
10 considering all the circumstances, counsel's performance fell below an objective standard of
11 reasonableness.  The court must determine whether in light of all the circumstances, the
12 identified acts or omissions were outside the wide range of professionally competent assistance.
13 <u>Id.</u> at 690.  "Review of counsel's performance is highly deferential and there is a strong
14 presumption that counsel's conduct fell within the wide range of reasonable representation."
15 <u>United States v. Ferreira-Alameda</u>, 815 F.2d 1251, 1253 (9th Cir. 1986).

16           To meet the prejudice prong, petitioner must show that "there is a reasonable
17 probability that, but for counsel's unprofessional errors, the result of the proceeding would have
18 been different."  <u>Strickland</u>, 466 U.S. at 694.  A reasonable probability is "a probability sufficient
19 to undermine confidence in the outcome."  <u>Id.</u>  The focus of the prejudice analysis is on "whether
20 counsel's deficient performance renders the result of the trial unreliable or the proceeding
21 fundamentally unfair."  <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 372 (1993).

22           In the present case, trial counsel argued petitioner's claim to the court:

> Regarding count three, relating razor blades, Mr. Jaime would like me to make this motion to dismiss on the basis that at the point and at the place where the razor blades were retrieved that he–he was not officially, technically, in administrative segregation yet, referring to Title 15, Crime Prevention and Corrections Sections 3105 entitled Unauthorized Areas in Facility Boundaries, subdivision A: Every area of facility which is out of bounds to

7

> inmates or which is only out of bounds as specified shall be clearly designated. Inmates shall not enter such areas unless specifically authorized to do so by staff.
>
> There was no testimony that there were any–might have said the word "specifically designated." The word is clearly, "clearly designated." Mr. Jaime's contention there's been no testimony there were any clearly designated out-of-bounds portions. Further, administrative segregation is an out of bounds portion, but Mr. Jaime contends that where he was at, the point the razor blades were retrieved were either not an out-of-bounds portion, or if they were, or it was, it was not clearly designated. And we would move to dismiss Count Three on that basis.

(RT 302.)

The trial court rejected this argument stating that the statute covers any area. (RT 305.) Petitioner argues, however, that if his trial counsel had conducted further investigation into this issue he would have found evidence which would have persuaded the court to agree that petitioner's offense was not possession of prohibited weapons. Instead, petitioner claims he was only guilty of attempted possession of prohibited weapons because of the location where he was caught with the contraband.

Petitioner has not satisfied either prong required under Strickland. First, trial counsel's failure to investigate further into this issue was not objectively unreasonable. Petitioner faced three counts which exposed him to consecutive 25-years-to-life sentences under California's three strikes law. The lesser included offense of attempted possession of weapons is treated the same as a conviction for a completed felony; each must receive the three strikes sentence. People v. Espinoza, 58 Cal. App. 4th 248, 251-252 (1997). Even if petitioner and his counsel were successful, petitioner would still have been facing the same sentence. Therefore, it was not unreasonable for counsel to focus his limited resources on other aspects of the case.

In considering the second prong, the court finds that counsel's lack of additional investigation into this issue did not prejudice the petitioner. California Penal Code section 4502 states that "every person who, while at or confined in any penal institution...possesses or carries upon his or her person...any...sharp instrument...is guilty of a felony." Thus, section 4502 does

8

not limit the offense to certain areas of the institution.

Petitioner appears to argue that prison regulations make section 4502 ambiguous. The court is at a loss, however, as to how the above-referenced section could be construed as ambiguous. The prison regulations highlighted by the prisoner do not demonstrate such an ambiguity. (See Am. Pet. Ex. A.) Even assuming arguendo that petitioner could demonstrate such an ambiguity, state statutes trump regulations made by state agencies. "When a statute confers upon a state agency the authority to adopt regulations to implement, interpret, make specific or otherwise carry out its provisions, the agency's regulations must be consistent, not in conflict with the statute, and reasonably necessary to effectuate its purpose." Mooney v. Pickett, 4 Cal.3d 669, 679 (1971); Gov. Code, § 11342.2. California courts have invalidated regulations that are inconsistent with state statutes. Id. Thus, the petitioner cannot show that he has been prejudiced, or that there is a reasonable probability of a more favorable result since the evidence was more than ample to support a conviction under Penal Code Section 4502. As a result, petitioner's ineffective assistance of counsel claim should be denied.

C. Claim 3:  Improper Rebuttal Evidence

Next, petitioner claims that the trial court and his counsel failed to exclude the rebuttal testimony of inmate Loran Berry ("Berry").

Petitioner's claim regarding the trial court's alleged error fails because it does not state a federal question. It is California law that encourages evidence directly probative of crimes charged to be included in the prosecution's case in chief. People v. Mayfield, 14 Cal. 4th 668, 761 (1997); People v. Thompson, 27 Cal.3d 303, 330 (1980).   There is no federal constitutional right to prevent evidence from being introduced in the prosecution's rebuttal case. Jenner v. Class, 79 F.3d 736 (8th Cir. 1996). The court has the discretion to admit the testimony even if it was possible for the prosecution to present the witness in its case in chief. United States v. Marsh, 451 F.2d 219 (9th Cir. 1971). Here, the trial court allowed Berry's testimony because it went directly to motive. (RT 422.) Thus, petitioner's claim should be denied because it is

inappropriate for federal habeas corpus review.  <u>Estelle v. McGuire</u>, 502 U.S. at 68.

Petitioner also asserts in this same claim that his trial counsel was ineffective. Petitioner concedes that his counsel did object to Berry's testimony.  Yet, petitioner argues that counsel's objection should have been more specific, that he should have requested Berry's testimony be excluded, and that he should have objected during the incriminating parts of Berry's testimony. (Am. Pet. at 22-23.)

Before trial, the court held that Berry would not be permitted to testify that the petitioner was a "block shot caller."[4]  The prosecutor informed the court that he did not intend to call Berry as a witness.  As a result, the court ruled that Berry's name should not be used in opening statements.

After petitioner's counsel presented the defense, the prosecutor informed the court that Berry would be called as a witness for the state.  Petitioner's counsel asked the court to reaffirm its pretrial ruling that Berry not be allowed to testify as to defendant's status as a "block shot caller."  Petitioner's counsel also requested permission to give an additional opening statement regarding Berry's testimony.  (RT 423-425.)  The court denied counsel's second request.  (<u>Id</u>.)  Petitioner never objected to Berry's testimony as improper rebuttal.  (RT 423-425.)  The state appellate court denied this claim because of petitioner's failure to object to Berry's testimony during the prosecution's rebuttal.

The contemporaneous objection rule is an independent and adequate state procedural rule.  See <u>Wainwright v. Sykes</u>, 433 U.S. 72, 87-8 (1977); <u>Chein v. Shumsky</u>, 323 F.3d 748, 751-52 (9th Cir. 2003) (overruled on other grounds); <u>Bonin v. Calderon</u>, 59 F.3d 815, 842-43 (9th Cir. 1995).  Therefore, petitioner is procedurally barred from bringing this claim in the federal habeas context and his claim should be denied.

///

---

[4] A "block shot caller" is someone who gives directions for his gang. (Answer Ex. F.)

10

### D. Claim 4: Denial of Due Process

Petitioner's final claim is that his trial counsel failed to investigate the difference between the secured housing unit ("S.H.U.") and the protective custody unit ("P.C.U.") and as to the reason why Berry was being housed there. (Am. Pet. 26-27.) Specifically, petitioner claims that his counsel was under the mistaken assumption that Berry was in the S.H.U. for safety, rather than disciplinary actions. (Id. at 27.) Petitioner claims that Berry had apparently asked for increased protection in return for his cooperation with the prosecution. (Am. Pet. Ex. D.)

Petitioner again fails to demonstrate ineffective assistance under Strickland. Petitioner claim is that counsel's additional investigation would have provided counsel with additional information to impeach Berry with respect to his cooperation with the prosecution. Petitioner further explains that such information would suggest that Berry was testifying against the petitioner only for the purpose of obtaining more secure housing. (Pet. at 26-27.) However, counsel vigorously cross-examined Berry with questions regarding his conviction of murder in the first degree; his life sentence without parole; that his only opportunity to leave prison was to come to court and testify; and the inconsistencies in Berry's testimony at the second trial compared to the first trial. (RT 512-570.)

As stated above, there is a strong presumption that counsel's conduct was reasonable. Here, counsel asked Berry several questions going to his credibility. The fact that counsel did not ask the exact questions that petitioner desired is not unreasonable. See Herman v. Butterworth, 744 F.Supp. 1128, 1132 (S.D. Fla. 1989).

Moreover, there was ample evidence to convict petition even in absence of Berry's testimony. (See Answer Ex. F. at 5-6.) The evidence that petitioner claims would have been revealed had his counsel conducted additional investigation would have only added additional impeachment evidence. Thus, petitioner fails both of the Strickland prongs and his last claim should be denied.

///

III. Conclusion

The majority of petitioner's claims involve petitioner's Sixth Amendment right to effective assistance of counsel. However, this court finds that the petitioner has not met his burden under Strickland v. Washington, 466 U.S. 668 (1984). Moreover, there was sufficient evidence to convict the petitioner on all counts.

In accordance with the above, IT IS HEREBY RECOMMENDED that the petitioner's petition for writ of habeas corpus be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fifteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within five days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: April 22, 2005

/s/   **CRAIG M. KELLISON**
Craig M. Kellison
UNITED STATES MAGISTRATE JUDGE